TURNER et al. v. LEWIE, Mayor.

No. 14840.

Court of Civil Appeals of Texas.
Fort Worth.

March 14, 1947.

Rehearing Denied April 11, 1947.

Cecil Murphy, of Gainesville, for appellants.

Jack Garrett, of Gainesville, and Earl L. Coleman, of Denton, for appellee.

McDONALD, Chief Justice.

On November 29, 1946, there was held in the City of Gainesville a special election at which were submitted to the citizens eight proposed amendments to the city charter. This suit was brought for the purpose of contesting the election.

In their first amended original petition, on which they went to trial, the contestants sought to have the election declared void under the Uniform Declaratory Judgments Act, Acts 1943, 48th Leg., p. 265, ch. 164, Vern.Tex.Civ.St. Art. 2524—1, but in the same pleading declared that they sought as well to contest the election. Appellee contends that the City of Gainesville was a necessary party to the suit, by reason of the provisions of Section 11, of the Uniform Declaratory Judgments Act, which

requires that the municipality be made a party if the proceedings involve the validity of a municipal ordinance or franchise. In our opinion the case is governed by the provisions of Articles 3069 and 3070, which provide that in certain election contests the mayor of the city shall be made the contestee. Hayter v. Baker, Tex.Civ.App., 293 S.W. 331.

Appellee argues that the statutes last referred to do not govern the case, on the ground that the jurisdiction of the district courts in election contests is limited to an inquiry into the matters pertaining strictly and directly to the election itself and happening on the day of the election. General language may be found in some of the opinions of our appellate courts indicating that such may be the rule, but if the language found be examined in the light of the facts involved in each of those decisions, it will be seen that such a statement of the rule is too broad to permit of general application. It is clear to us that all of the irregularities charged in the present election, to be discussed later, were proper subjects of inquiry in the contest brought by appellants. Dickson v. Strickland, 114 Tex. 176, 265 S.W. 1012; Holden v. Phillips, Tex.Civ.App., 132 S.W.2d 419. As is said in Dickson v. Strickland, an election is not a single event, but a process, and the entire process is subject to contest, including the manner of giving notice of the election, the manner in which the ballots are prepared, and various other things which of necessity precede an election.

Prior to the time of the election complained of, Gainesville had what is commonly called a city manager form of government. On October 1, 1946, the City Council passed a resolution authorizing notice to be "published as required by law regarding election for the change of the City of Gainesville charter," to quote from the minutes of the meeting. The minutes set out the form of the notice to be given, as follows:

"That on the 28th day of October, 1946, at the Council Room at the City Hall, Gainesville, Texas, at 7:30 p. m., it is the intention of the City Council of the City of Gainesville, Texas, to meet in special session for the purpose of passing an ordinance authorizing an election to be held on the 29th day of November, 1946, same being the fourth Friday of said month, submitting amendments to the existing charter of said city to change the City government from a City Manager form of government to the Aldermanic form of city government, and making other changes to said charter to conform thereto."

The minutes further recite that a copy of said proposed ordinance is now on file with the City Secretary.

The above notice was published for the time required by law.

On October 28th the City Council passed an ordinance providing that at an election to be held on a named date there should be submitted to the qualified voters of Gainesville eight proposed charter amendments, which were set out in full in the text of the ordinance. The said ordinance was not published in any newspaper, nor was any legal notice thereof given by publishing or posting, except that copies of the ordinance were sent by mail to the voters as hereafter described.

The contestants, who are the appellants in this court, attack the election in their first two points of error on the ground that there was no publication of the ordinance in a local newspaper after its passage and before the election, and on the ground that the notice of the intention of the City Council to pass an ordinance ordering an election was not a sufficient notice of the election in that the notice did not contain the substance of any of the eight proposed charter amendments, nor did it clearly set forth and apprise the voters of the object and purpose of the meeting and special election.

Laws requiring notice of general elections, held on days fixed by law, are usually held to be directory only, because it is presumed that time and place of the election is known to all without special notice. But the rule is different as to special elections. It is usually held that the required notice of a special election constitutes a condition upon which authority is granted to hold the election, and that there must be a substantial compliance with the

law. It has often been held that failure to give the required notice invalidates the special election. 18 Am.Jur., p. 245; 29 C.J.S., Elections, §§ 72, 73, p. 96, 98; Croxton v. Truesdel, 75 S.C. 418, 56 S.E. 45; Coffee v. Lieb, Tex.Civ.App., 107 S.W.2d 406, and the many cases there cited; Countz v. Mitchell, 120 Tex. 324, 38 S.W.2d 770; Missouri K. & T. R. Co. v. Tolbert, 100 Tex. 483, 101 S.W. 206; ·Cunningham v. State, 119 Tex.Cr.R. 572, 44 S.W.2d 739. As is noted in the opinion last cited, there are announcements in certain decisions of our courts to the effect that irregularities in an election will not invalidate the election if the voters had notice of the election and participated in it, and that to invalidate the election it must be shown that the result of the election would probably have been different but for the irregularities complained of. The rule mentioned may be applied in a proper case, but may not, in our opinion, be applied where there is an entire failure to give a notice required by law, or where there is not a substantial compliance with the law. The proceedings of the election, and those leading up to it, must themselves give sufficient notice regarding the election and its purposes. It is not enough that some or even all of the voters learned of the election through reading news items, or by conversations with other citizens, or by hearing of it through any means other than the notices required to be given by the statutes regulating the election. If there is not a substantial compliance with the law in the proceedings leading up to the election, there is no valid election. The will of the majority of the voters might be expressed in any number of ways, as in a mass meeting, or by petition, and yet not amount to an election. Our system of government depends for its existence on orderly elections, held strictly in accordance with the law, and surrounded by all of the safeguards which the lawmakers have seen fit to impose. It is important that the voters receive legal notice of the election and the purposes for which it is to be held.

The pertinent statutes regarding notice of an election to amend a city charter are Articles 1165, 1166, 1170, and 1171. Appellants and appellee differ as to the interpretation of these statutes. As we construe them, they provide as follows:

Art. 1165 provides that the charter may be amended by a majority vote of the qualified voters.

Art. 1166, pertaining to the adoption of a new charter, requires that the ordinance providing for submission of the question of adopting a new charter shall be published in some local newspaper published in the city.

Art. 1170 requires that an ordinance providing for the submission of amendments to an existing charter shall make the same provision for holding the election and publishing notice thereof as is provided in Art. 1166.

Art. 1171 reads as follows:

"No ordinance shall be passed submitting an amendment or amendments until twenty days' notice has been given of such intention by publication for ten days in some newspaper published in said city. By 'twenty days' is meant from the first date said notice is published."

To sum up, notice must first be given of the intention to pass the ordinance calling the election. Art. 1171. After such notice is given, the ordinance calling the election is passed, or, of course, may not be passed. If it is passed, then notice must be given of the election called for in the ordinance. Art. 1170. The notice so required is the same notice that is required in the case where the question of a new charter is to be submitted.

Appellee argues that the notice of the intention of the City Council to pass an ordinance calling the election was a substantial compliance with the requirement that notice be given of the election. We disagree with this contention for two reasons. In the first place, we think that two notices are required, and we can see good reason for requiring two notices. The first notice is of the intention of the City Council to pass an ordinance providing for submission of charter amendments to the voters. This gives the voters an opportunity to be heard before the City Council. It is matter of common knowledge that legislative bodies may change or even

abandon proposed legislation after the people have learned of the proposed legislation and have been afforded an opportunity to be heard by the legislative bodies. If, after due notice, the governing body of the city passes an ordinance providing for submission of charter amendments, then the voters receive legal notice of the action finally taken by the governing body through the publication of the ordinance in a local newspaper as is required by Articles 1166 and 1170. Since Art. 1166 does not prescribe the length of time for which said notice shall be published, it would appear that publication in one issue of the newspaper would constitute a sufficient compliance with the law. Art. 29a, Vern.Tex. Civ.St., Acts 1941, 47th Leg. p. 480, ch. 303.

In addition to the notice required to be published in a newspaper, Art. 1170 requires that the governing body of the city shall cause the city clerk or city secretary to mail a copy of the proposed amendment or amendments to every qualified voter in said city as appears from the tax collector's rolls for the year ending January 31st, preceding the election. The time when this must be done is not set out in the statute. In the present case this portion of the statute was complied with, and appellee urges that this, coupled with other publicity which the election received, was enough to give the voters reasonable notice of the election. If we are correct in holding that two forms of notice were required, publication in the newspaper and mailing copies of the proposed amendments to the voters, then we must hold that the giving of notice in only one of the ways prescribed was not enough.

■ If we be in error in holding that a second notice was required to be published, that is to say, that notice had to be given both before and after the passage of the ordinance, we nevertheless hold that the notice published before the ordinance was passed, which is set out in full in the early part of this opinion, was not sufficient to give the voters fair notice of the purposes of the election or the nature and substance of the proposed amendments. According to the notice, the amendments would "change the city government from a City Manager form of government to the Aldermanic form of city government" and would make other changes to the charter to conform thereto. The term "Aldermanic form of city government" does not have such definite legal significance as to apprise the voters of the nature of the proposed amendments. They may have supposed that a city manager would not longer be employed, but as to many of the details of government covered by the amendments set out in the ordinance, the nature of them was revealed in no manner whatever in the notice given. Under the liberal provisions of our laws relating to home rule cities, there can be wide variations in charter provisions, whether the city government be a so-called city manager, commission, or aldermanic form of government. The published notice gave no hint as to the number of aldermen or their powers, or whether they were to be elected from districts or from the city at large. It did not state whether other officials would be elected by the people, or appointed, and if appointed, by whom, and afforded no explanation as to the nature or numbers of offices or officials affected by the proposed amendments. The notice was entirely insufficient to constitute a reasonable notice of the election.

■ The most serious irregularity charged, as we view the case, pertains to the form of the ballot. Eight proposed charter amendments were submitted to the voters. The form of the ballot was as follows:

"Official Ballot

Gainesville, Texas

Friday, November 29, 1946

For Amendment No. I

Against Amendment No. I

For Amendment No. II

Against Amendment No. II

For Amendment No. III

Against Amendment No. III

For Amendment No. IV

Against Amendment No. IV

For Amendment No. V

Against Amendment No. V

For Amendment No. VI
Against Amendment No. VI
For Amendment No. VII
Against Amendment No. VII
For Amendment No. VIII
Against Amendment No. VIII"

The statutes do not prescribe the form of ballot to be used in this sort of election. The ballot should contain a description of the proposition submitted in such language as to constitute a fair portrayal of the chief features of the proposed law, or amendment, in words of plain meaning, so that it can be understood by persons entitled to vote. 18 Am.Jur., p. 298. It is not customary to print the full text of the proposed law or amendment on the ballot, but it is sufficient if enough is printed on the ballot to identify the matter and show its character and purpose. 29 C.J.S., Elections, § 170, p. 246. The rule is recognized in the opinion in Reynolds Land & Cattle Co. v. McCabe, 72 Tex. 57, 12 S.W. 165, where it is said:

"When a statute which authorizes a special election for the imposition of a tax prescribes the form in which the question shall be submitted to the popular vote, we are of opinion that the statute should be strictly complied with, but, if the form is not prescribed, then we are of opinion that the language of the proposition submitted is not material, provided it substantially submits the question which the law authorizes with such definiteness and certainty that the voters are not misled."

The situation is analogous to that of submission of a constitutional amendment. Article 2982 provides that if the Legislature fails to prescribe the form of ballot to be used in such case, the Governor in his proclamation shall prescribe the form of ballot, "describing [it] in such terms as to give a clear idea of the scope and character of the amendment in question." In the very same statute it is provided that the form in which any proposition or question to be voted on by the people of any city, county or other subdivision of the State shall be submitted shall be prescribed by the local or municipal authorities submitting it. In Flowers v. Shearer, Tex.Civ.App., 107 S.W.2d 1049, 1054, writ dismissed, the court declared that "any form of ballot that will sufficiently inform the voters as to the issue submitted and at the same time intelligently express the will of voters in the election, would be sufficient for a valid beer election, granting that every other requisite of the law has been complied with." The rule is again recognized in Akers v. Remington, Tex. Civ.App., 115 S.W.2d 714, writ dismissed. For the voters in the election now under review to have voted intelligently, they would have been compelled to remember the nature of each of the amendments submitted and the number of each and the order in which they appeared on the ballot. Obviously, the ballot did not meet the tests announced by the above authorities. Appellee relies chiefly on the case of Shaw v. Lindsley, Tex.Civ.App., 195 S.W. 338. As we construe that opinion, it supports the arguments advanced by appellants, rather than those advanced by appellee.

Other questions are raised in the briefs of the parties, but since the irregularities already pointed out compel us to hold that the election was invalid, we shall not further extend this opinion by discussing the other questions raised.

We may appropriately quote the language of the late Justice Marvin H. Brown, of this Court:

"We are reluctant to hold invalid such an election as this, and thus set aside the will of a majority of the qualified voters who participated in the election, but under the authorities, it is our manifest duty to do so, even though we are convinced that the results of the election would not have been different had the proper ballot been used." Jones v. Threet, Tex.Civ.App., 117 S.W.2d 560, 561.

The judgment of the district court is reversed, and judgment is here rendered for appellants, declaring the said election void.