## ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

January 26, 2011

The Honorable Todd Hunter
Chair, Committee on Judiciary and
    Civil Jurisprudence
Texas House of Representatives
Post Office Box 2910
Austin, Texas 78768-2910

Opinion No. GA-0838

Re: Proper compliance of a publication with the provisions of section 2051.044, Government Code, in order to be considered the official newspaper of a municipality (RQ-0907-GA)

Dear Representative Hunter:

On behalf of the City of Ingleside (the "City"), you request an opinion about the qualification of a newspaper to be the designated newspaper of the City under section 2051.044 of the Government Code and ask whether the current designated newspaper complied with the City's charter.[1]

Chapter 2051, subchapter C, of the Government Code establishes requirements for governmental entities to post notice by publication in certain limited circumstances. *See* TEX. GOV'T CODE ANN. §§ 2051.041–.053 (West 2008). Relevant to your request, subsection 2051.044(a)(3) requires that a "newspaper in which a notice is published . . . be entered as second-class postal matter in the county where published."[2] *Id.* § 2051.044(a)(3). The City asks whether the current designated newspaper complies with this requirement. Gray Letter at 5.

The City apparently believes that in order to comply with the literal requirements of section 2051.044(a)(3), its designated newspaper must be entered as second-class postal matter in San Patricio County, where Ingleside is located, but the designated newspaper has a second-class postal permit in Aransas County, not San Patricio County. *See* Gray Letter at 2. However, the plain language of subsection 2051.044(a)(3) requires only that the newspaper "be entered as second-class postal matter *in the county where published*." TEX. GOV'T CODE ANN. § 2051.044(a)(3) (West 2008) (emphasis added). This subsection does not separately require the newspaper to be entered as second-class postal matter in the county were the governmental body is located.

---

[1]Request Letter (*available at* http://www.texasattorneygeneral.gov); *see* Letter from Jim Gray, City Manager of Ingleside (attachment to Request Letter) [hereinafter Gray Letter].

[2]The United States Postal Service changed the designation of "second-class" to "periodicals," but, as this office has previously recognized, the renaming did not effect a substantive change. Tex. Att'y Gen. LO-96-084, at 3. Because the Texas statute uses the language "second-class," we also do so here.

A paper is published at the time and place where it is released to the public. *Christy v. Williams*, 292 S.W.2d 348, 352 (Tex. Civ. App.—Galveston 1956, writ dism'd w.o.j.); *see also* Tex. Att'y Gen. Op. No. O-7112 (1946) at 3 ("publication is legally made in such county when mailed or distributed therefrom"). Based on the facts presented by the City Manager, the City's designated paper is released to the public, at least in part, in Aransas County.[3] Gray Letter at 2–3. He also explains that the newspaper possesses a second-class mail permit and is entered as second-class postal matter in Aransas County. *Id.* at 2. Thus, based on the facts provided, it appears that the designated newspaper complies with section 2051.044(a)(3).[4]

The second question raised by the request asks whether the City's publication of sample ballots for the general election complies with provisions of the City's charter. Gray Letter at 6. This office does not determine whether particular actions constitute a violation of a city charter. Tex. Att'y Gen. Op. No. GA-0431 (2006) at 3; *see also* Tex. Att'y Gen. Op. No. GA-0648 (2008) at 5 (explaining that this office typically does not construe city charter provisions). Furthermore, answering this question first requires a finding of certain facts, which we cannot do in an attorney general opinion. Tex. Att'y Gen. Op. No. GA-0726 (2009) at 3. We therefore decline to answer your question regarding the City's compliance with its own charter.

---

[3]The facts provided also suggest that the newspaper may be published, in part, in San Patricio County. One brief submitted suggests that a newspaper has only one official publishing location, which is a "known office of publication" under the United States postal regulations, and is "at the location where the original entry for Periodicals mailing privileges is authorized." U.S. POSTAL SERVICE, DOMESTIC MAIL MANUAL, 707 Periodicals § 4.6.1 (Dec. 6, 2010), *available at* http://pe.usps.com/text/dmm300/dmm300_landing.htm; *see* Letter from Don R. Richards, Attorney for the Tex. Press Ass'n., at 3 (Sept. 9, 2010) (on file with the Opinion Committee) [hereinafter Richards Letter]. The location of publication may be so defined for purposes of the federal regulations, an issue we need not decide here. However, under Texas law and as used in the relevant statute at issue, the location of publication is where the newspaper is released to the public.

[4]One brief submitted suggests that the City's newspaper violates other Government Code provisions. Richards Letter at 1. However, your request concerns "only the [newspaper's] compliance with 2051.044(a)(3)," and our opinion is limited accordingly. Gray Letter at 2.

## S U M M A R Y

Because the City of Ingleside's designated newspaper publishes in Aransas County and is entered as second-class postal matter in that same county, it complies with the requirements of Government Code section 2051.044(a)(3).

Very truly yours,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

DAVID J. SCHENCK
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Virginia K. Hoelscher
Assistant Attorney General, Opinion Committee